IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCE WALTERS and KIMBERLY ANN BULLARO, | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 15 C 0736 |
| v. | )<br>) |
| SGT. THOMPSON, et al., | )<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On March 10, 2015, Plaintiffs Joyce Walters and Kimberly Ann Bullaro filed a five-count First Amended Complaint alleging that Defendant DuPage County Deputy Sheriffs John Smith,[1] Frank DiCosola, and Sergeant Brian Thompson violated their constitutional rights under the Fourth Amendment bringing claims of unlawful seizure (Count I), excessive force (Count II), and false arrest (Count III). *See* 28 U.S.C. § 1331, 42 U.S.C. § 1983. Plaintiffs also bring an Illinois malicious prosecution claim against the individual Defendant Officers (Count IV) and a state law indemnification claim under 745 ILCS 10.9-102 against DuPage County (Count V) pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

Before the Court is Defendants' summary judgment motion under Federal Rule of Civil Procedure 56(a) and Northern District of Illinois Local Rule 56.1. For the following reasons, the Court grants in part and denies in part Defendants' summary judgment motion. The only

---

[1] In their response brief, Plaintiffs voluntarily dismiss their claims against Defendant John Smith. (R. 39, Resp. Brief, at 5-6.) The Court therefore dismisses Defendant Smith as a named Defendant with prejudice.

remaining substantive claim in this lawsuit is Plaintiff Walters' excessive force claim against Sergeant Thompson as alleged in Count II of the First Amended Complaint.

## BACKGROUND

I.  **Northern District of Illinois Local Rule 56.1**[2]

"The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). Local Rule 56.1(a) "requires the party moving for summary judgment to file and serve a 'statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Id.* at 218 (citation omitted). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Petty v. Chicago,* 754 F.3d 415, 420 (7th Cir. 2014) (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) requires the non-moving party to file a separate statement of additional facts. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015).

Local Rule 56.1 statements and responses should identify the relevant admissible evidence supporting the material facts – not make factual or legal arguments. *See Zimmerman v. Doran,* 807 F.3d 178, 180 (7th Cir. 2015). "When a responding party's statement fails to dispute

---

[2] Plaintiffs filed a 20-page response brief without prior approval from the Court in violation of Northern District of Illinois Local Rule 7.1.

2

the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis*, 807 F.3d at 218 (quoting *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009)). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere,* 791 F.3d 764, 767 (7th Cir. 2015).

Here, three of Plaintiffs' Rule 56.1(b)(3)(A) responses to Defendants' Rule 56.1(a) Statement of Facts do not cite to the record as dictated by the local rule, and therefore, the Court deems those facts as admitted for purposes of the present summary judgment motion. *See Curtis,* 807 F.3d at 218. These paragraphs include ¶¶ 19, 20, and 21. In addition, certain citations to the record in Plaintiffs' Rule 56.1(b)(3)(C) Statement of Additional Facts do not support the facts as stated, and thus do not comply with the local rule. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

During the relevant time period, Plaintiffs Joyce Walters and Kimberly Ann Bullaro resided at 7 N 271 Briargate Terrace, Medinah, Illinois in DuPage County ("Medinah residence") and Defendants Sergeant Thompson and Deputy DiCosola were sworn DuPage County Deputy Sheriffs. (R. 36, Defs.' Stmt. Facts ¶ 2; R. 42, Pls.' Stmt. Add'l Facts ¶ 1.) On the morning of January 30, 2013, Defendant Officers were sent to the Medinah residence to determine if John Walters – who was wanted in connection with two felony warrants in Boone

County, Illinois – was at the Medinah residence. (Defs.' Stmt. Facts ¶ 3; Pls.' Stmt. Facts ¶ 2.) Upon their arrival, the officers rang the doorbell and knocked on the door. (Pls.' Stmt. Facts ¶ 5.) Plaintiff Bullaro, Joyce Walters' daughter, was at the Medinah residence when Defendant Officers arrived and later testified that, at that time, she heard Sergeant Thompson threatening to take down the door with a sledgehammer. (Pls.' Stmt. Facts ¶ 11; Ex. 6, Bullaro Dep., at 20-21.) Tina Walters, also Joyce Walters' daughter, suggested that she would go outside and speak to Defendant Officers. (Defs.' Stmt. Facts ¶ 5.) While outside on the driveway at the Medinah residence, Defendant Officers Thompson and DiCosola advised Tina that they were looking for John Walters explaining that he was wanted in connection with two felony warrants. (*Id*. ¶ 7.) Tina responded that John Walters' car was not in the driveway. (Pls.' Stmt. Facts ¶ 6.) Deputy Smith arrived at the Medinah residence while Defendant Officers were talking to Tina in the driveway. (Defs.' Stmt. Facts ¶ 4.)

At some point earlier, a DuPage County Sheriff's dispatcher called Joyce Walters to inform her that Defendant Officers were at her door, but that she did not know the nature of the officers' presence. (Defs.' Stmt. Facts ¶ 39; R. 36-9, Ex. 8, Audio Recording, at 2-5.) During her conversation with the dispatcher, Walters told the dispatcher that she was having a heart attack. (*Id.* ¶ 9; Audio Recording, at 8.) The dispatcher relayed this information to Defendant Officers Thompson and DiCosola, after which the officers requested the dispatcher to notify the local fire department. (Pls.' Stmt. Facts ¶ 9; Defs.' Stmt. Facts ¶ 11.) The dispatcher then contacted the Roselle, Illinois Fire Department to dispatch an ambulance in response to Walters stating that she was having a heart attack, after which the fire department responded. (Defs.' Stmt. Facts ¶¶ 12, 13.) Two paramedics then arrived at the Medinah residence. (Pls.' Stmt.

4

Facts ¶ 8.)

Further, it is undisputed that once dispatch notified Sergeant Thompson that Walters said she was having a heart attack, Thompson believed that the situation had become a medical emergency requiring medical assistance. (Defs.' Stmt. Facts ¶ 10.) It is also undisputed that the Roselle Fire Department would not leave the Medinah residence until Walters agreed to a medical evaluation or refused any such treatment. (*Id.* ¶ 15.) Also undisputed is that Sergeant Thompson was aware that the Roselle Fire Department would not leave – up to and including forcing entry into the Medinah residence – until they examined Walters or she refused treatment. (*Id.* ¶ 14.) The dispatcher told Walters that the paramedics would force entry if she did not comply and open the door, but Walters repeatedly told the dispatcher that no one was allowed to enter her home. (Pls.' Stmt. Facts ¶ 10; Audio Recording Tr., at 2, 6, 12.) In addition, it is undisputed that Walters told the dispatcher that she had knives in her house and if the police forced entry, she would kill them. (Defs.' Stmt. Facts ¶ 17.) The record also contains evidence that the dispatcher relayed this information to Sergeant Thompson and Deputy DiCosola. (R. 36-2, Ex. 1, Thompson Dep., at 32.) Further undisputed is that Walters directly told Defendant Officers that she had guns and knives inside her house and that she would shoot. (Defs.' Stmt. Facts ¶ 18.)

Walters eventually opened the door for the paramedics to check on her medical condition, at which time Sergeant Thompson also entered the Medinah residence. (Defs.' Stmt. Facts ¶ 19; Pls.' Stmt. Facts ¶ 22; R. 36-7, Ex. 6, Bullaro Dep., at 22.) Upon entering, Walters slapped Sergeant Thompson across the face. (Defs.' Stmt. Facts ¶ 20.) Deputy DiCosola witnessed Walters slap Sergeant Thompson, after which he entered the Medinah residence. (*Id.*

5

¶ 21.) Deputy Smith followed. (Defs.' Stmt. Facts ¶¶ 4, 23.) Defendant Officers assert that Walters fell to the ground, but Bullaro testified that Sergeant Thompson threw Walters to the ground and Walters testified that Sergeant Thompson "pushed me down when he pushed open the door." (Defs.' Stmt. Facts ¶ 22; Bullaro Dep., at 23-25; R. 36-6, Ex. 5, J. Walters Dep., at 27.)

After Defendant Officers entered the Medinah residence, Deputy DiCosola arrested Bullaro and charged her with misdemeanor obstruction of an officer in violation of 720 ILCS 5/31-1. (Defs.' Stmt. Facts ¶ 31; R. 36-11, Ex. 10; R. 36-3, Ex. 2, DiCosola Dep., at 47.) Sergeant Thompson arrested Walters and charged her with misdemeanor battery in violation of 720 ILCS 5/12-3(a)(2). (*Id.* ¶ 26; R. 36-13, Ex. 12.) The Public Defenders' Office represented both Walters and Bullaro in their misdemeanor proceedings. (*Id.* ¶¶ 27, 32.) Later, the DuPage State's Attorney's Office dismissed Plaintiffs' charges nolle prosequi. (*Id.* ¶¶ 28, 33.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

6

323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015).

## ANALYSIS

### I.     Unlawful Seizure Claim (Count I)

In Count I of the First Amended Complaint, Plaintiffs allege that Defendant Officers entered their home without a warrant, consent, or exigent circumstances, and thus their seizure was unlawful.[3] "[G]enerally speaking, warrantless searches and seizures 'are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *Fitzgerald v. Santoro,* 707 F.3d 725, 730 (7th Cir. 2013) (citation omitted). In the present motion, Defendant Officers contend that they entered the Medinah residence based on the emergency aid doctrine exception to the warrant requirement. Specifically, "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe a person within is in need of immediate aid." *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In other words, "law enforcement officers may enter a home without a warrant to render emergency assistance to

---

[3] Plaintiffs do not present evidence or develop any arguments that Defendant Officers conducted an unlawful search in violation of the Fourth Amendment. Accordingly, Plaintiffs have waived any such claim. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016); *Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007).

an injured occupant or to protect an occupant from imminent injury." *Brigham City v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). The test for this exception to the warrant requirement is objective, namely, "the question is whether the police, given the facts confronting them, reasonably believed that it was necessary to enter a home in order to 'render assistance or prevent harm to persons or property within.'" *Sutterfield v. City of Milwaukee,* 751 F.3d 542, 557 (7th Cir. 2014) (citation omitted); *see also United States v. Richardson,* 208 F.3d 626, 629 (7th Cir. 2000) ("the government must establish that the circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance.").

Construing the facts and all reasonable inferences in Plaintiffs' favor, it is undisputed that once the DuPage Sheriff's Office dispatcher notified the officers that Walters stated she was having a heart attack, Sergeant Thompson believed that the situation had become a medical emergency requiring immediate assistance. It is also undisputed that Sergeant Thompson was aware that the Roselle Fire Department would not leave – up to and including forcing entry into the Medinah residence – until they examined Walters or she refused treatment. There is also undisputed evidence in the record that Walters eventually opened the door, after which Sergeant Thompson, the other Deputy Officers, and the paramedics entered her home.

Plaintiffs argue that one of the paramedics at the scene, Thomas Lynch, later testified that he did not think Walters was having a heart attack. (Pls.' Stmt. Facts ¶ 18.) Plaintiffs, however, do not point to evidence in the record that Lynch told Defendant Officers this or that Defendant Officers knew Lynch believed as such at the time they entered the Medinah residence.

8

Similarly, Plaintiffs contend that Deputy Smith did not think Walters was having a heart attack and that he told Defendant Officers this, but Plaintiffs fail to properly cite to the record supporting these alleged facts. *See Thornton v. M7 Aerospace LP,* 796 F.3d 757, 769 (7th Cir. 2015) ("District courts are not obliged to scour the record looking for factual disputes."). In this context, the Court recognizes that "the business of policemen and firemen is to act, not to speculate or meditate on whether the [emergency information] is correct." *Richardson,* 208 F.3d at 630 ("People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process.") (citation omitted).

Given the facts confronting Sergeant Thompson and Deputy DiCosola at the time of their entry into the Medinah residence, it was objectively reasonable to believe that entering the Medinah residence was necessary to render medical assistance to Walters after dispatch informed them that Walters had told them she was having a heart attack. Dispatch further relayed to Sergeant Thompson and Deputy DiCosola that Walters had said she had knives and would kill the officers if they entered her residence. It is also undisputed that Walters directly told the officers that she had guns and knives inside her house and that she would shoot. Defendant Officers' reasonable belief that Walters was armed and that she threatened to kill them establishes additional exigent circumstances justifying their warantless entry. *See Sutterfield,* 751 F.3d at 557 (exigent circumstances exist "when there is a danger posed to others by the occupant of a dwelling, as when the occupant is armed and might shoot at the police or other persons"); *see, e.g.,Williams v. Indiana State Police Dept.,* 797 F.3d 468, 479 (7th Cir. 2015) ("the officers possessed an objectively reasonable belief that action was needed to avoid the threat to [plaintiff's] life and the potential threat to others inherent in the danger that

9

[plaintiff] could emerge in that agitated state with the knives."). That Deputy Smith did not think John Walters was at the Medinah residence on the morning of January 30, 2013 and told Defendant Officers this belief is not material in light of the medical emergency and exigent circumstances that evolved while Defendant Officers were at the residence.

Last, Plaintiffs argue that because Defendant Officers did not medically treat Walters upon entry, they did not have a reasonable belief to enter the residence based on a medical emergency. Plaintiffs' argument is speculative at best, especially in light of the fact that paramedics treated Walters at that time and that Defendant Officers believed that Walters was armed and dangerous. *See Formella v. Brennan,* 817 F.3d 503, 513 (7th Cir. 2016) (speculation "cannot be used to defeat a motion for summary judgment") (citation omitted). Moreover, Walters is the one who told the dispatcher that she was having a heart attack.

Because Plaintiffs have failed to present evidence creating a triable issue of fact that Defendant Officers' entry into the Medinah residence was objectively unreasonable, the Court grants Defendants' summary judgment motion as to Count I of the First Amended Complaint.

**II.     False Arrest Claim (Count III) and Malicious Prosecution Claim (Count IV)**

In Count III, Plaintiffs allege that Defendant Officers unlawfully arrested them in violation of the Fourth Amendment, and in Count IV, Plaintiffs allege a malicious prosecution claim under Illinois law. "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (citation omitted); *see also Swick v. Liautaud,* 169 Ill.2d 504, 512, 215 Ill.Dec. 98, 662 N.E.2d 1238 (Ill. 1996) (absence of probable cause to charge is a required element of an Illinois malicious prosecution claim). The

"fact that criminal charges are eventually dropped or the complaining witness later recants has no consideration in the determination of arguable probable cause at the time of arrest." *Burritt,* 807 F.3d at 249. "Police officers have probable cause to arrest when the totality of the facts and circumstances within their knowledge at the time of the arrest would warrant a reasonable person in believing the person has committed a crime." *Hart v. Mannina,* 798 F.3d 578, 587 (7th Cir. 2015). "Probable cause 'does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable.'" *Bailey v. City of Chicago,* 779 F.3d 689, 695 (7th Cir. 2015) (citation omitted). In other words, "[p]robable cause does not require certainty," instead it is a "fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *Hart,* 798 F.3d at 587 (citation omitted). For malicious prosecution claims under Illinois law, "[p]robable cause is defined as 'a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged.'" *Cairel v. Alderden,* 821 F.3d 823, 834 (7th Cir. 2016) (citation omitted).

In support of their motion, Defendant Officers present evidence that they had probable cause to arrest Walters for misdemeanor battery in violation of 720 ILCS 5/12-3(a)(2), which states that a "person commits battery if he or she knowingly without legal justification by any means ... makes physical contact of an insulting or provoking nature with an individual." Specifically, it is undisputed that once Sergeant Thompson entered the Medinah residence, Walters slapped him across the face. There is also undisputed evidence in the record that Deputy DiCosola witnessed Walters slap Sergeant Thompson. Examining the evidence and all reasonable inferences in Plaintiffs' favor – and based on the totality of the circumstances –

11

Defendant Officers had a reasonable belief that Walters committed a misdemeanor battery when she slapped Sergeant Thompson. *See, e.g., Gill v. Village of Melrose Park,* 35 F. Supp. 3d 956, 964-65 (N.D. Ill. 2014) (hitting police officer provided probable cause for battery arrest under Illinois law).

Likewise, Defendant Officers have presented evidence that they had probable cause to arrest Bullaro for misdemeanor obstruction of a police officer under 720 ILCS 5/31-1(a), which states: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity commits a Class A misdemeanor." Although merely arguing with a police officer does not violate 720 ILCS 5/31-1(a), refusing to desist from behavior that obstructs a police officer's duty violates the statute. *See Sroga v. Weiglen,* 649 F.3d 604, 608 (7th Cir. 2011); *see also Abbott v. Sangamon Cnty., Ill.,* 705 F.3d 706, 721 (7th Cir. 2013) (statute proscribes "physical act which imposes an obstacle which may impede, hinder, interrupt, prevent[,] or delay the performance of the officer's duties") (citation omitted). As the Supreme Court of Illinois teaches, the "legislative focus of section 31–1(a) is on the tendency of the conduct to interpose an obstacle that impedes or hinders the officer in the performance of his authorized duties." *People v. Baskerville,* 963 N.E.2d 898, 905, 357 Ill. Dec. 500 (Ill. 2012).

Evidence in the record – viewed in Plaintiffs' favor – shows that Bullaro positioned herself between her mother and Sergeant Thompson. (DiCosola Dep., at 47-48, Bullaro Dep., at 23-25.) Deputy DiCosola testified that at that time, he thought Bullaro was going to strike Sergeant Thompson. (DiCosola Dep., at 47-48.) Also, Deputy DiCosola testified that he told

Bullaro to back away, but Bullaro refused to do so. (*Id*. at 48.) Under these circumstances and the totality of the facts within Deputy DiCosola's knowledge at the time of the arrest, it was reasonable for Deputy DiCosola to believe that Bullaro was about to strike Sergeant Thompson and that Bullaro's refusal to back away impeded the officers from performing their authorized tasks. *See Cairel,* 821 F.3d at 834; *Abbott*, 705 F.3d at 721.

Because probable cause is a complete defense to § 1983 false arrest claims and Illinois malicious prosecution claims, Plaintiffs have failed to present evidence raising a triable issue of fact as to their false arrest (Count III) and malicious prosecution (Count IV) claims. *See Cairel,* 821 F.3d at 834; *Hart,* 798 F.3d at 590.[4]

### III. Excessive Force Claim – Count II

Next, Plaintiffs allege that Sergeant Thompson used excessive force when entering the Medinah residence because he pushed Walters to the ground before arresting her. A law enforcement officer's right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396. "In determining whether police used excessive force under the Fourth Amendment, the relevant inquiry is 'whether the officers' actions [were] objectively reasonable in light of the totality of the circumstances.'" *Flournoy v. City of Chicago*, 829 F.3d 869, 871 (7th Cir. 2016) (citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective

---

[4] Plaintiffs' state law malicious prosecution claim also fails because they did not present evidence that their criminal prosecutions were resolved in their favor. *See Logan v. Caterpillar, Inc.,* 246 F.3d 912, 926 (7th Cir. 2001) ("The bare use of a *nolle prosequi* order does not establish that the criminal proceedings were terminated in a manner indicative of the plaintiff's innocence."). Here, Plaintiffs base their argument regarding their nolle prossed charges on mere conjecture, which does not defeat summary judgment on their malicious prosecution claim. *See Dawson v. Brown,* 803 F.3d 829, 834 (7th Cir. 2015).

13

of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "Factors relevant to the reasonableness inquiry include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Williams v. Brooks,* 809 F.3d 936, 944 (7th Cir. 2016) (quoting *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Examining the facts and all reasonable inferences in Plaintiffs' favor, they have presented evidence – albeit disputed – that Sergeant Thompson was aggressive, stated he would use a sledgehammer to gain entry, and that he pushed Walters to the ground after he entered the Medinah residence. At her deposition, Walters testified that as a result of the incident, she suffered pain in her hip and tail bone. In addition, although there is evidence in the record that Walters was approximately 80-years-old at the time of the January 2013 incident, the parties do not point to any evidence showing that Sergeant Thompson or Deputy DiCosola knew that Walters was elderly prior to entering the Medinah residence. Added to this calculus is that Walters slapped Sergeant Thompson at some point after he entered the Medinah residence, although it is unclear when this slap occurred. Construing these facts and all reasonable inferences in Plaintiffs' favor, the question is whether pushing Walters, an elderly woman, to the ground resulting in an injured hip was an objectively reasonable use of force under these circumstances. *See Graham,* 490 U.S. at 397.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers[,] violates the Fourth Amendment." *Padula v. Leimbach,* 656 F.3d 595, 602 (7th Cir. 2011) (quoting *Graham*, 490 U.S. at 396). That being said, "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty,* 77 F.3d 1045, 1048 (7th Cir. 1996). Here, judging from the perspective of a reasonable officer, whether Walters provoked Sergeant Thompson prior to her falling to the ground is question of fact for the jury because it is unclear whether Walters slapped Sergeant Thompson before she was on the ground or after the paramedics helped her up. In addition, whether Walters was an immediate threat to safety is a question of fact because although she had told the officers that she was armed and would shoot, evidence in the record also shows that Defendant Officers had an ongoing conversation with Walters – in which they tried to convince her to open the door for the paramedics – immediately before she voluntarily opened the door for the paramedics. Because of the disputed facts in relation to Walters' excessive force claim, including the timing of the events, the Court denies this aspect of Defendants' summary judgment motion.

On a final note, although Defendants make a cursory, one-sentence argument that Defendant Thompson is protected by qualified immunity as to Walters' excessive force claim, Defendants do not develop this argument or cite legal authority to support any such argument. Accordingly, Defendants' undeveloped argument is waived. *See Schaefer v. Universal Scaffolding & Equip., LLC,* ___ F.3d ___, 2016 WL 5864513, at *5 (7th Cir. Oct. 7, 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). The Court therefore denies Defendants' summary motion as to Plaintiff Walters'

excessive force claim against Sergeant Thompson as alleged in Count II.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' motion for summary judgment.

**Dated:** October 12, 2016

              **ENTERED**

              _____
              **AMY J. ST. EVE**
              **United States District Court Judge**